# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN HOLLAND,        )
                                    )
          Plaintiff,      )
                                    )
vs.                          )      Case No.  CIV-14-184-R
                                    )
CAROLYN W. COLVIN, acting  )
Commissioner Social Security  )
Administration,            )
                                    )
          Defendant.   )

## REPORT AND RECOMMENDATION

Steven Holland (Plaintiff) invoked the court's jurisdiction under the Social Security Act to obtain judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying Plaintiff's application for disability insurance benefits. *See* 42 U.S.C. § 405(g). United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). The undersigned has now carefully reviewed the pleadings, the administrative record (AR), and the parties' briefs and, for the following reasons, recommends that Judge Russell affirm the Commissioner's decision.

## I.     Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps).

Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *see also Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a residual functional capacity (RFC) assessment at step four to determine what Plaintiff can still do despite his impairments. *See* 20 C.F.R. § 404.1545(e); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993).[1] Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

---

[1]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1945(a)(1).

## II.  Analysis.

### A.  Standard of review.

The court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.  Plaintiff's statement of the facts.

Plaintiff alleges that he became disabled as of November 23, 2010 as a result of heart disease, chronic obstructive pulmonary disease (COPD), and lung problems. Doc. 11, at 4.[2]  The Social Security Administration denied his application for disability insurance benefits at the State agency level, a determination he then challenged by requesting a hearing before an Administrative Law Judge (ALJ). *Id*.  He states the requested hearing was held on November 19, 2012, and that he was fifty-three years-old at the time, with a limited education, and with past relevant work as a truck driver. *Id*.[3]

---

[2]  Citations to Plaintiff's brief reflect this Court's CMECF pagination.

[3]  In his application for disability benefits, Plaintiff reported that he was born on July 29, 1953. AR 161. So, he was fifty-nine years-old at the time
(continued...)

Plaintiff alleges that he was hospitalized for pneumonia, respiratory failure, and COPD in November 2010. *Id.* He maintains that following his hospital stay Dr. Pope noted he was on 3.5 liters of oxygen most of the time. *Id.* at 4-5. He refers to the RFC fashioned by a State agency medical consultant restricting him to work where he could avoid fumes, odors, dusts, gases, and poor ventilation. *Id.* at 5. He also points to a February 2011 pulmonary examination showing very poor airway movement. *Id.*

Plaintiff states that he "also has a history of Coronary Artery Disease." *Id.* He refers to stent placement in "200[0], 2004, and 2006" and alleges that he "continues to be affected by his CAD." *Id.*[4] He also notes three abnormal electrocardiogram results on November 24, 25, and 26, 2010. *Id.*

Plaintiff also submits that he "has had problems" with pain in his back and both shoulders and that in June 2010 an x-ray of the cervical spine revealed spurs. *Id.* He took Prednisone for the pain, "but the pain would always come right back." *Id.* He points to a September 2010 MRI of his right shoulder showing "a partial thickness tear of the tendons and a small joint effusion." *Id.*

---

[3](...continued)
of the hearing.

[4]     The only mention of ongoing coronary artery disease in the three records cited by Plaintiff is found at AR 364, a treatment record dated over a year before his alleged onset of disability.

He contends that "Dr. Pope noted Mr. Holland has degenerative bone disease with questionable cervical degenerative joint disease which he thinks is what is causing his headaches." *Id.*

Plaintiff further alleges that he "was rear-ended in a motor vehicle accident in March 2012, which caused additional neck, shoulder and joint pain." *Id*. He refers to an x-ray showing cervical lordosis, disc height reduction, with endplate sclerosis and marginal osteophytes representing degenerative disease. *Id.*

In addition, Plaintiff reports a diagnosis of major depressive disorder. *Id.* He observes that he has been "depressed since his last divorce in May 2009, but that it has worsened significantly since his bout of pneumonia." *Id.*

Finally, Plaintiff states that "Dr. Pope noted that Mr. Holland is on a multitude of medications and said '[I]t is my opinion that he would be unable to maintain gainful employment or education.'" *Id*. at 5-6 (citing AR 439).

**C.  Plaintiff's stated claim of error.**

Plaintiff, who is represented by counsel, claims the "lack of substantial evidence" as error. *Id.* at 2, 6. He does not include any sub-claims. Rather, his brief jumps from contention to contention as, consequently, does this report.[5]

---

[5] In presenting this report, the undersigned considered an attempt to carve-out sections of Plaintiff's brief by topic. But any attempt by the
(continued...)

## D. Whether, considering each contention in the order raised in "Mr. Holland's Brief in Chief," Plaintiff has demonstrated reversible error.[6]

Plaintiff first claims that the ALJ erred in finding that certain of his impairments were non-severe, specifically his coronary artery disease, depression, left rotator cuff tear, and the fact that he "now . . . is on oxygen due to the increasing severity of his COPD." *Id.* at 6.[7] According to Plaintiff, "[u]nfortunately, all of these increased impairments were found to be 'non-severe' by this ALJ." *Id.* Relying on Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *5 (July 2, 1996), he faults the ALJ for failing to consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 7 (quoting SSR 96-8p, 1996 WL 374184, at *5).

As Plaintiff correctly states, the ALJ determined that Plaintiff's non-severe impairments included "history of coronary artery disease (CAD) status

---

[5](...continued)
undersigned to organize Plaintiff's arguments for the benefit of a reviewing court could lead to the omission or misconstruction of one or more of Plaintiff's contentions.

[6]     Plaintiff did not exercise his option to file a reply brief. *See* Doc. 10, at 1.

[7]     The ALJ found that Plaintiff was *severely* impaired by COPD. AR 22.

post stents; possible rotator cuff tear . . . and depressive disorder." AR 24.[8] But, contrary to Plaintiff's contention, the ALJ then detailed the evidence pertaining to Plaintiff's non-severe impairments, *id.* at 24-29, and found that "there is no evidence of record that [Plaintiff] experiences any work related limitations as a result of history of coronary artery disease (CAD) status post stents; possible rotator cuff tear; . . . and depressive disorder." *Id.* at 26.

In addressing the ALJ's explication and resulting findings, Plaintiff summarily maintains that

> this ALJ makes numerous citations to the record attempting to shore up his errant non-severe allegation, but all of his citations to the record can be seen for what they are; a lack of supportability for such his position and reflective that it is not supported by substantial evidence. (AR 24-26)[.]

Doc. 11, at 6. In this same vein and, once again, summarily, Plaintiff argues only that the ALJ "simply wrote a lot of boilerplate Medical Evidence of Record (MER) which even failed to support his contention." *Id.* at 7.

The undersigned must evaluate these contentions in the light of the Tenth Circuit's admonition that "perfunctory complaints fail to frame and develop an issue sufficient to invoke [judicial] review." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). The court is unable to address contentions for which

---

[8]     The ALJ found that Plaintiff had other non-severe impairments. AR 24. Plaintiff makes no claim as to these other impairments. *See* Doc. 11.

a claimant fails to develop the factual and legal bases for his arguments.  *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). On judicial review, "it is not our role to shore up [Plaintiff's] argument for him . . . ."  *Chrismon v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013) (citation omitted).

In that regard, considering the three non-severe impairments Plaintiff singles-out – coronary artery disease, depression, and a possible rotator cuff tear – his arguments relate only to the possible rotator cuff tear impairment.  Doc. 11, at 7-10.  He posits that the tear "is anything but a 'possible' tear as the ALJ suggests."  *Id.* at 8.  He argues that "the limitations and restrictions" resulting from the possible rotator cuff tear "never made it to the ALJ's Residual Functional Capacity (RFC)."  *Id.* at 7.[9]

To support his contention that the RFC assessed by the ALJ does not properly account for the limitations imposed by a possible rotator cuff tear, Plaintiff first defines the medical terminology used in the report of the MRI study of his left shoulder in September 2010.  *Id.* at 7-8; *see* AR 24 (the ALJ's

---

[9]        In so doing, Plaintiff seemingly acknowledges that any step-two error by the ALJ "became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

documentation of the MRI report) & 241-42 (MRI report). Next, he explains that his RFC is what he can still do despite his limitations. Doc. 11, at 8. He recites that the ALJ found he had the RFC to perform medium work, meaning that the ALJ found he was able to lift no more than fifty (50) pounds at a time and able to frequently lift or carry objects weighing up to twenty-five (25) pounds. *Id.* He concludes – with no record support – that "the MER reflects this man cannot even lift fifty (50) pounds, much less frequently lift twenty-five (25) pounds as the ALJ alleges." *Id.* Then, in summary, Plaintiff offers his opinion: "There is no support for the ALJ's RFC. It's just too much lifting." *Id.* Plaintiff's bald assertion of the existence of this purported "MER" defies meaningful judicial review. He does not direct the court to any evidence, including evidence of any limitation or restriction suggested by any medical provider, that the ALJ failed to consider or failed to properly consider in assessing Plaintiff's RFC for work at the medium exertional level.

In sum, the only specific and developed claim of error presented by Plaintiff from Page 6 of his brief through the last full paragraph of Page 8 is unavailing. *Id.* at 6-8.

Next, citing 20 C.F.R. § 404.1545(a)(2), Plaintiff contends that "most importantly" the ALJ failed to support his RFC assessment with "a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts . . . and nonmedical evidence." *Id.* at 8-9. But even a cursory review of the ALJ's extensive hearing decision – with his detailed discussion of the medical and opinion evidence as well as Plaintiff's subjective contentions – readily belies this conclusory claim. AR 22-33; *see Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (concluding "that the ALJ's RFC determination is supported by a proper narrative statement").

Similarly, and again claiming legal error, Plaintiff faults the ALJ's RFC assessment because it is not expressed in terms of work-related functions. Doc. 11, at 9. Once again, though, this contention is demonstrably erroneous. The ALJ visibly found "that [Plaintiff] has the residual functional capacity to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; to stand and/or walk for six hours during an eight-hour workday; and to sit for six hours total during an eight-hour workday." AR 28-29. Plaintiff's argument in support of this claim that "the ALJ failed to properly perform these vital functions" – an argument that centers on Plaintiff's alleged shoulder impairments, the issue of severity, and RFC restrictions – indicates his apparent misconception of a work-related function. Doc. 11, at 9; *see* SSR 96-8p, 1996 WL 374184, at *3 ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.").

Plaintiff's next contention is that "[t]he ALJ failed to explain why he didn't adopt the MRI opinion, but instead called it a non-severe impairment. It still was required to be expressed in work-related limitations in his RFC as the law requires." Doc. 11, at 9. To the extent this claim can be analyzed, the ALJ's narrative discussion *did* include the MRI findings, findings that *do not* include an opinion by a medical source as to Plaintiff's functional abilities. AR 24, 241-42.

In sum, Plaintiff has failed to demonstrate reversible error through his contentions that start with the final two lines on Page 8 of his brief and conclude with the first line on Page 10. Doc. 11, at 8-10.

Plaintiff's next challenges the ALJ's analysis of the credibility of his claim that he is unable to sustain employment, in part, because he "do[es] breathing treatments three times a day . . . ." *Id.* at 10; AR 53, 55. The ALJ, considering Plaintiff's testimony at the administrative hearing that each of his treatments takes "[a]bout fifteen minutes" and that he normally tries to take the treatments "early in the morning, maybe Noon, and the late afternoon, 7:00, 8:00," concluded that Plaintiff's need for only "one 15-minute treatment during the workday" diminished the believability of the claimed impact of breathing treatments on his ability to work. AR 55, 30.

Plaintiff argues that in making such finding the ALJ failed to consider

"the fact that the stress of work would exacerbate his symptoms requiring even more treatment"; that "[h]is present treatments are made easier due to the fact he is home in a controlled environment"; that he might need more than three treatments; that he might not be able to find an available electrical socket; and that it is unclear "where he is going to have his machine as a 'bookmobile driver' and rental car deliverer?" Doc. 11, at 10 (citing AR 34 and the ALJ's step-five findings).[10] But Plaintiff does no more than speculate and, without record support, fails to demonstrate error.

Plaintiff then questions, "[W]here in the RFC is the provision that Mr. Holland will be dragging around an oxygen bottle?" *Id.* According to Plaintiff, "[t]he use of oxygen must be in the RFC or it is error." *Id.* But Plaintiff fails to point to evidence of his oxygen use. *Id.* Elsewhere in his brief – dated June 23, 2014 – he affirmatively represented to the court that "*now* Mr. Holland is on oxygen due to the increasing severity due to the increasing severity of his COPD. (AR 432)[.]" *Id.* at 6 (emphasis added). The treatment note he cites, however, is from February 24, 2011 – only three months after his alleged onset

---

[10] Plaintiff also inserts the following step-five contention at this point in his brief: "There is no support for the ALJ's findings and there is no substantial evidence for his findings at step five. They are simply incongruent with the jobs he found." Doc. 11, at 10. But, once again, "perfunctory complaints fail to frame and develop an issue sufficient to invoke [judicial] review." *Murrell*, 43 F.3d at 1389 n.2.

of disability – and includes a hand-written notation that " _____ is going to stop paying for his O[xygen] if it's 88 or above." AR 432. Then, on March 15, 2011, Plaintiff advised the consultative examining psychologist "that he was hospitalized for eight days and *was* on oxygen until two weeks prior to the evaluation" by the psychologist. *Id.* at 387 (emphasis added).

Plaintiff then returns to his credibility arguments to take issue with the ALJ's "conclusory" finding "that Mr. Holland's daily activities are not limited to the extent one would expect." Doc. 11, at 11.[11] Citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), he maintains that "[t]his is insufficient because minimal daily activities, such as those in [sic] issue, do not establish that a person is capable of engaging in substantial physical activity." *Id.* "But the ALJ noted [Plaintiff's] activities only in contrast to [his] claim of extreme limitations . . . ." *Hendron*, 767 F.3d at 956; *see* AR 30.

Similarly, Plaintiff maintains that "[t]he ALJ's failure to articulate all of the legal requirements in a pain case causes his opinion to also be unsupported by substantial evidence." Doc. 11, at 11. He maintains "the record is replete with instances where Mr. Holland sought medical treatment for pain symptoms

---

[11]    Throughout this report, while making every effort to accurately state Plaintiff's contentions, the undersigned departs from Plaintiff's practice of referring to the ALJ's findings as the ALJ's allegations. *See e.g.*, Doc. 11, at 10.

. . . ." *Id.* He submits that the ALJ erred by failing to consider his attempts to relieve his pain and his contacts with physicians. *Id.* To the contrary, the ALJ fully detailed Plaintiff's treatment history and reports of pain, AR 22-25, and acknowledged that Plaintiff "has received treatment for the allegedly disabling impairments . . . ." *Id.* at 30.

Plaintiff then faults the ALJ for failing to "explain why the objective medical evidence does not support Mr. Holland's complaints of disabling pain," claiming "the ALJ merely lists Mr. Holland's daily activities as substantial evidence that he does not suffer disabling pain." Doc. 11, at 12. On the next page of his brief, however, Plaintiff fatally undermines the factual basis of that contention by pointing to other credibility findings by the ALJ – specifically, a finding about the nature of Plaintiff's treatment. *Id.* at 13.

In addition, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), Plaintiff asserts that the ALJ's assessment "is a far cry from applying all of the *Luna* standards and therefore substantial evidence does not support his position." *Id.* at 12. He focuses on the second step of the *Luna* analysis and claims he "must establish only a loose nexus between the impairment and the pain alleged." *Id.*; *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (At the second of "the three-step analysis set out in . . . *Luna* an ALJ . . . is required to . . . determine . . . whether . . . a pain-producing . . . impairment is reasonably

14

expected to produce some pain of the sort alleged (what we term a 'loose nexus').") (quoting *Luna*, 834 F.2d at 163-64).

Plaintiff argues that "[w]hile the ALJ listed the law from the *Luna* case, he misapplied its required factors." Doc. 11, at 13. According to Plaintiff, the ALJ "should have known that the MRI cited above, would, alone, satisfy the "loose nexus" required." *Id.* He also points to prescribed "powerful medications" and to the fact that his treating physician, Dr. Pope, "even stated that he was on a 'multitude of medications' . . . ." *Id.* This contention can only be read to assert that the ALJ erred in *not* finding the requisite loose nexus despite the cited evidence. Because the ALJ did, in fact, "find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," that contention fails. AR 30.

Plaintiff then characterizes the ALJ's finding that Plaintiff's "treatment has been relatively routine and conservative in nature" as "preposterous." Doc. 11, at 13 (citing AR 30). To support that evaluation, Plaintiff refers to "[m]ajor surgery for the placement of four (4) cardiac stents" and to "an MRI showing a need for more surgical intervention" as "never routine or conservative . . . ." *Id.* at 13. This proffered support does not undercut the ALJ's finding. Plaintiff stated elsewhere in his brief that the stent placements were in 2000, 2004, and 2006, long before his alleged November 2010 onset of disability. *Id.* at 5. And,

while he purports to attribute an interpretation of the MRI as "showing a need for more surgical intervention" to the record, Plaintiff's only citation is to the ALJ's hearing decision. *Id.* at 13.[12]

Plaintiff's final contention with regard to the ALJ's credibility assessment is well-taken but fails to support remand. The ALJ, as fact-finder, cited various instances in which Plaintiff had provided "inconsistent information." AR 30-31. He then concluded that "[a]lthough the inconsistent information provided by [Plaintiff] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by [Plaintiff] generally may not be entirely reliable." *Id.* at 31. Plaintiff properly challenges the validity of the ALJ's findings in one cited instance. Doc. 11, at 13-14.

The ALJ found that Plaintiff "testified that he was in the hospital for a month in November with breathing problems. However, the medical evidence of record inconsistently demonstrates [Plaintiff] was in the hospital for one week (Exhibit B3F)." AR 31. Plaintiff argues – correctly – that he testified that he was hospitalized a little over a week. Doc. 11, at 13-14; AR 52.

Plaintiff concludes that "[t]his ALJ statement is simply false and cannot

---

[12]     *See Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (holding that the court "will not comb through the record where counsel has not provided specific references tied to an argument").

be used as a proper basis to defeat credibility." Doc. 11, at 13. While the undersigned agrees that the ALJ erred in making this factual determination, the error does not require remand. Plaintiff does not contest the factual or legal footing of the other instances of "inconsistent information" on which the ALJ relied, and he has failed to establish any other error in the ALJ's negative assessment of the credibility of his claims of *disabling* symptoms. This single error by the ALJ does not serve to "undermine confidence in the determination of this case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).

In sum, Plaintiff has failed to demonstrate reversible error by virtue of his contentions that begin with the first paragraph on Page 10 of his brief and end with the first two sentences on Page 14. Doc. 11, at 10-14.

Next, Plaintiff alleges that the ALJ gave "no weight to treating physician Dr. Pope" and that "[t]he reasoning of the ALJ is flawed in how he rejected the opinion." *Id.* at 14. The opinion at issue was expressed in the following undated letter from Dr. Pope, addressed "To Whom it May Concern":

> Mr. Holland is a patient of mine. He suffers from coronary artery disease, COPD, essential hypertension, hypercholesterolemia, gastroesophageal reflux disease, and degenerative bone disease. He is followed very closely in the clinic. He is on a multitude of medications. It is my opinion that he would be unable to maintain gainful employment nor education. He recently was seen for possible rotator cuff tear and thus his condition has even deteriorated. If I can be of any further service, please contact me here at TriCity Family Clinic.

AR 439.

Dr. Pope's opinion implicates the issue of disability, a legal conclusion reserved to the Commissioner. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)*; see also* 20 C.F.R. § 404.1527(d)(1). "Medical sources often offer opinions about whether an individual who has applied for . . . disability benefits is 'disabled' or 'unable to work,' or make similar statements of opinions." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). Such "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." *Id.* at *2. The issue of disability is simply not a medical opinion. *See* 20 C.F.R. § 404.1527(d). Nonetheless,

> opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p, 1996 WL 374183, at *3. The ALJ's "decision must explain the consideration given to . . . treating source opinion(s)." *Id.* at *6.

Here, the ALJ's decision does just that. He stated that

I am affording Dr. Pope's opinion little weight, as it is not fully

supported by nor is it consistent with the medical evidence of record as a whole. This opinion is inconsistent with Dr. Pope's own treatment notes whereby Dr. Pope provided no limitations or restrictions to the claimant at office visits. Furthermore, Dr. Pope's treatment notes indicated he advised the claimant in non-medical pain relieving modalities and on the dependence of Lortab. Dr. Pope reports the claimant's chronic problems are CAD, COPD, hypertension; hyperlipidemia and GERD. The claimant's cardiologist determined the claimant did not need surgical intervention. An Echocardiogram (ECG) of December 1, 2010 showed an ejection fraction equal or greater than 55%; mild mitral annular calcification and trace mitral regurgitation. A Nuclear Medicine Myocardial Perfusion Study of December 2, 2010 demonstrated no evidence of perfusion or wall motion abnormality and an ejection fraction of 58%. Treatment notes of Dr. Nagle of March 14, 2011 indicated the claimant was doing well; he no longer exposed to limestone dust; x-rays showed improved atelectasis; and the claimant was to continue using his CPAP machine and continue the same medication. Dr. Nagle reported the claimant was to follow up in one year and his COPD was stable. Treatment notes of Edward A. Lee, M.D. of May 9, 2012 and May 16, 2012 reported on physical examination, everything was normal with the exception of cellulitis on the claimant's right index finger . . . . Emergency department notes of Kevin Hoos, D.O. indicated the claimant reported some neck stiffness and some diffuse neck pain but denied radiation of the pain. He denied weakness to the upper extremities and was in no acute distress. On physical examination, Dr. Hoos reported the claimant had mild diffuse midline tenderness and bilateral trapezial spasm. Dr. Hoos further reported the x-rays showed no fractures or sublaxation, the claimant did have some loss of normal kyphosis secondary to spasm but no other acute abnormalities. Dr. Hoos assessed the claimant with cervical and trapezial spasm. Dr. Hoos discharged the claimant in stable condition. All of these inconsistencies render Dr. Pope's opinion less probative.

AR 32-33 (internal record citations omitted).

The ALJ fully explained the consideration he gave to Dr. Pope's opinion.

And, while Plaintiff asks the court to reweigh the evidence he cites, Doc. 11, at

16-19, the court has no authority to do so. *See Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007).

Finally, Plaintiff faults the ALJ for giving great weight to the opinions of

State agency medical consultants and argues that the opinions cannot be

substantial evidence in support of the RFC. Doc. 11, at 19. He argues that Dr.

Woodcock's RFC assessment, AR 406-13, is "not a valid RFC" because "it only

addresses COPD" and "fails to address all of his medical conditions," specifically,

"his coronary artery disease, cervical arthritis or bilateral shoulder problems."

Doc. 11, at 19. Plaintiff acknowledges that a State medical consultant

subsequently "notes COPD and adds DDD of C Spine and shoulder spurs" but

"[t]at's still not all the impairments." *Id.* (citing AR 437). Plaintiff also

generally disparages the opinions of the State agency consultants on the

grounds that the consultants did not examine Plaintiff. *Id.*

As to the opinions of State agency consultants, Social Security regulations

provide that

> [a]dministrative law judges are not bound by any findings made by
> State agency medical or psychological consultants, or other program
> physicians or psychologists. State agency medical and psychological
> consultants and other program physicians, psychologists, and other
> medical specialists are highly qualified physicians, psychologists,
> and other medical specialists who are also experts in Social Security

disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence.

. . .

20 C.F.R. § 404.1527(e)(2)(i). The ALJ, noting this requirement, documented the fact that the State experts had "concluded [Plaintiff] could perform medium work activity with the avoidance of concentrated exposure to dust, fumes, gases and poor ventilation (Exhibits B13F; B19F: B20F)." AR 33. He "afford[ed] these opinions great weight, as they are fully supported by and consistent with the medical evidence of record as a whole." *Id.*

Plaintiff has not established otherwise. Doc. 11, at 6-19. He has failed to demonstrate the existence of any *work-related limitations* for which the ALJ did not properly account in formulating his RFC.

In sum, Plaintiff has failed to demonstrate reversible error through his contentions that begin with the first paragraph on Page 14 of his brief and end on Page 20. *Id.* at 14-20.

## III.  Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends that Judge Russell affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this Report and Recommendation by the 11th day of January, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 22nd day of December, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE